IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**RALPH WESTERFIELD,**

      **Plaintiff,**

v.                                                                  No. CIV-13-0873 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Motion to Remand (Doc. 27)*, and brief in support of motion to remand [*Doc. 28*], both filed July 1, 2014 (hereinafter, collectively, "motion"). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 6* and *18*]. On August 28, 2014, Defendant filed a response to the motion [*Doc. 29*], and, on September 16, 2014, Plaintiff filed a reply [*Doc. 30*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 24*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On January 28, 2010, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), respectively, alleging that he became disabled on December 8, 2008.  [*Doc. 24-7* at 6-10 and 2-5, respectively]. Plaintiff stated that he became disabled due to "Copd; arthritis-neck, shoulder, knees; acid reflux." [*Doc. 24-8* at 23].  Both of these applications were denied at the initial level on July 27, 2010 (*Doc. 24-5* at 4-7), and each application was denied at the reconsideration level on January 20, 2011 (*id.* at 10-13 and 14-16, respectively).  Pursuant to Plaintiff's request (*id.* at 17-18), Administrative Law Judge Thomas W. Bundy (hereinafter "ALJ") conducted a hearing on May 25, 2012.  [*Doc. 24-3* at 12-27].[1]  At the hearing, Plaintiff was present, was represented by counsel and testified.  *Id.* at 14, 15-25.  In addition, Vocational Expert (hereinafter "VE"), Nicole King was present and testified (*id.* at 14, 15-16), and witness Terri Westerfield, was present and testified (*id.* at 14, 25-26).

On June 15, 2012, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 24-3* at 31-43].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 9), and, on July 9, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-4), which made the ALJ's decision the final decision of the Commissioner.  On September 11, 2013, Plaintiff filed his complaint in this case. [*Doc. 1*].

---

[1] While the hearing transcript states that the hearing took place on May 25, 2013 (*see Doc. 24-3* at 12), this appears to be a typo, as the ALJ and Defendant both state that the hearing took place on May 25, 2012 (*see id.* at 31 and *Doc. 29* at 1).

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on January 24, 1959. [*Doc. 24-7* at 6]. Plaintiff has held a job as a motel manager. [*Doc. 24-8* at 12]. Plaintiff alleges that he is unable to work because of "Copd;

arthritis-neck, shoulder, knees; acid reflux." *Id.* at 23.  Plaintiff's medical records include: a Pulmonary Questionnaire by Marian Landau, D.O., dated February 13, 2010 (*Doc. 24-10* at 3-6); a Medical Opinion Re: Ability To Do Physical Activities, by Marian Landau, D.O., dated February 13, 2010 (*id.* at 8-10); a Disability Determination Examination by Marian Landau, D.O., dated May 10, 2010 (*id.* at 12-15); three Case Analyses, one by Samuel Pallin, M.D., dated June 7, 2010 (*id.* at 16), one by Allen Gelinas, M.D., dated January 18, 2011 (*Doc. 24-11* at 43), and one by Elizabeth Chiang, M.D., dated January 19, 2011 (*id.* at 45); an Independent Consultative Examination by Carmen M. Diaz, Ph.D., dated June 10, 2010 (*Doc. 24-10* at 17-20); a Psychiatric Review Technique by Renate Wewerka, Ph.D., dated July 27, 2010 (*id.* at 21-34); and a Mental Residual Functional Capacity Assessment by Renate Wewerka, Ph.D., dated July 27, 2010 (*id.* at 35-38).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of December 8, 2008.  [*Doc. 24-3* at 33].  At step two, the ALJ found that Plaintiff has the following severe impairment: Posttraumatic Stress Disorder.  *Id.*  At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id.* at 33-34.

Before step four, the ALJ determined that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and carry out detailed but not complex instructions[,] make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and

respond appropriately to changes in a work setting." *Id.* at 35. In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]." *Id.* at 35-36. The ALJ stated that he gave the state agency physicians' opinions significant weight because they are consistent with the objective medical evidence and the reports and findings of the treating and examining physicians. *Id.* at 37. The ALJ stated that he gave little weight to Dr. Landau's opinion because the ALJ questioned the veracity of the opinions when Dr. Landau's examination of Plaintiff was "completely normal." *Id.* The ALJ stated that he gave the assessments by the "physician at La Clinica De Familia" little weight because they were predominately fill-in-the-blank questionnaires without much explanatory narrative, and because the ALJ "kept in mind the biases a treating physician may bring to the disability evaluation." *Id.* at 37-38. The ALJ stated that he considered Plaintiff's subjective complaints of pain, fatigue and depression, but found that "the medical evidence shows that with all the complaints considered[,] [Plaintiff] can still perform at the reduced light level outlined in the aforementioned [RFC]." *Id.* at 38. At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a motel clerk. *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

In his motion to reverse or remand, Plaintiff makes the following arguments: (1) the ALJ erred by failing to find that Plaintiff's multiple physical impairments were severe (*Doc. 28* at 6-7); (2) the ALJ's boilerplate credibility finding was flawed (*id.* at 7-9); and (3) the ALJ erred by failing to incorporate relevant limitations in his RFC determination and hypothetical question to

the VE (*id.* at 9-14). In response, Defendant argues that substantial evidence supports the ALJ's findings, the ALJ did not err at step two with regard to Plaintiff's severe impairments, the ALJ properly evaluated Plaintiff's credibility, and the ALJ did not err in his RFC determination or hypothetical to the VE. [*Doc. 29* at 3-13].

### A.   The ALJ's Step Two Finding

Plaintiff first contends that the ALJ erred by failing to find that Plaintiff's physical impairments are severe. [*Doc. 28* at 6-7]. At step two, an impairment should be found to be severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Under the *de minimus* standard, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citations and internal quotation marks and brackets omitted). The claimant need only establish - and the ALJ need only find - one severe impairment to avoid a denial of benefits at step two. *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149, 2009 WL 3821522 (10th Cir. Nov. 17, 2009) (unpublished). If the ALJ finds that the claimant has a severe impairment, then he may not deny benefits at step two, and he must proceed to step three. *See id.* Therefore, the "failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.*

Plaintiff's contention that the ALJ erred for failing to find that his physical impairments are severe fails as a matter of law because the ALJ found that Plaintiff had the severe impairment of Post-traumatic Stress Disorder and proceeded to the subsequent steps of the sequential evaluation process. *See* [*Doc. 24-3* at 33]. Therefore, any error in failing to find Plaintiff's physical

7

impairments severe at step two is not reversible. *See Dray*, 353 Fed. Appx. at 149. For this reason, the Court finds that the ALJ did not commit reversible error at step two. To the extent Plaintiff contends that the ALJ erred by failing to properly consider his physical impairments at step four in the ALJ's RFC determination, the Court considers that allegation below

### B.   The ALJ's RFC Determination and Consideration of Dr. Landau's Opinions

Next the Court considers Plaintiff's contention that the ALJ erred at step four in his RFC determination. [*Doc. 28* at 6 and 9-14]. Specifically, Plaintiff contends that the ALJ failed to incorporate into his RFC determination Dr. Landau's diagnoses of chronic obstructive pulmonary disease with asthma, chronic back pain, and bilateral hand numbness (*id.* at 6) and Dr. Landau's findings regarding Plaintiffs limitations with walking, sitting, standing, and lifting, and need for breaks and absences from work (*id.* at 11-12). Plaintiff contends that the ALJ improperly discredited Dr. Landau's opinions. *Id.* at 12-13. Plaintiff also contends that the ALJ failed to incorporate evidence regarding Plaintiffs moderate difficulties in social functioning. *Id.* at 10-11.

In response, Defendant contends that the ALJ's finding regarding Plaintiffs difficulty in social functioning is not in error because it is consistent with the opinion of Dr. Wewerka. [*Doc. 29* at 9]. Defendant further contends that the ALJ properly considered Dr. Landau's assessments and found that they were inconsistent with the relatively normal examination findings Dr. Landau reported (*id.* at 10-11), and that Plaintiff's reports regarding his activities as a full time manager at a hotel contradict Dr. Landau's functional assessments (*id.* at 11).

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC

8

assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. SSR 96-8p at *5. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted). If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight." If, however, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the

medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citations and internal quotation marks omitted).

Here, the ALJ found that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and carry out detailed but not complex instructions[,] make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting."  [*Doc. 24-3* at 35].  The ALJ's RFC determination, however, includes no limitations regarding Dr. Landau's diagnoses of chronic obstructive pulmonary disease and back pain (*see Doc. 24-10* at 3 and 8), or Dr. Landau's findings regarding Plaintiff's limitations in his abilities to sit, stand, walk, and lift, and his need for breaks and absences from work (*id.* at 4-6 and 8-10).  The ALJ stated that he gave little weight to Dr. Landau's opinion because Dr. Landau's examination of Plaintiff was "completely normal."  [*Doc. 24-3* at 37].  The ALJ is apparently referring to Dr. Landau's findings in her Disability Determination Examination that Plaintiff's lung exam and examination for back pain was "normal" on that day.  *See* [*Doc. 24-10* at 14].  The Court finds that the ALJ's decision to reject all of Dr. Landau's opinions other than her findings that Plaintiff's examinations were normal on one day, is legal error because the ALJ fails to state whether Dr. Landau's diagnoses and findings

of physical limitations are inconsistent with the evidence in the record.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted); *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").  Moreover, Defendant's attempt to supply the ALJ's reasoning for his findings (*see Doc. 29* at 11) is an impermissible *post hoc* rationalization.  *See Robinson*, 366 F.3d at 1084 (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

In addition, the ALJ stated that he gave little weight to "the assessments completed by the physician at La Clinica De Familia" (*Doc. 24-3* at 37), but it is not clear that the ALJ understood that this physician is Dr. Landau (*see Doc. 24-3* at 36, citing the Pulmonary Questionnaire and Medical Opinion forms filled out by Dr. Landau at *Doc. 24-10* at 3-6 and 8-10).  Regardless, the ALJ's explanation that he rejected these findings because they appear on fill-in-the-blank forms is questionable.  As the Tenth Circuit held in *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), check-box forms from a treating physician, as compared to a non-treating doctor, cannot be discounted merely because they are check-box forms, where the treating physician "made notes or circled the medical terms for [the doctor's] findings on [the doctor's] own medical form clearly set up to record the results of a thorough physical examination [and] it was not the agency's checklist RFC form."  Here, the forms filled out by Dr. Landau include handwritten notes, and Dr. Landau circled the medical terms for her findings on the forms.  *See* [*Doc. 24-10*

at 3-6 and 8-10]. The ALJ's rejection of these opinions because they were on forms is, therefore, questionable under the holding of *Carpenter*. In addition, the ALJ's rejection of Dr. Landau's findings because the ALJ "has kept in mind the biases a treating physician may bring to the disability evaluation" is in direct conflict with the law regarding the weight an ALJ is to give a treating physician's opinion. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.") (citation and internal quotation marks omitted). For these reasons, the Court finds that this case should be remanded for an evaluation of Dr. Landau's findings in accordance with *Krauser*, SSR 96-8p, and other applicable law.

Similarly, the Court finds that the ALJ failed to properly consider Plaintiff's limitations in social functioning. Dr. Diaz found that Plaintiff has moderate limitations in his abilities to understand and remember basic instructions, concentrate and persist at tasks of basic work, and interact with the general public and/or co-workers, all due to his depression and anxiety. [*Doc. 24-10* at 19]. Dr. Wewerka found that Plaintiff has moderate limitations in maintaining social functioning, and concentration, persistence and pace (*id.* at 31), in understanding and remembering detailed instructions, in working in coordination with or proximity to others without being distracted by them, in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, and in interacting with the general public, supervisors and coworkers or peers (*id.* at 35-36). These findings are contrary to the ALJ's RFC finding that Plaintiff "can understand, remember and carry out detailed but not complex

12

instructions[,] make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." [*Doc. 24-3* at 35]. Moreover, the ALJ failed to discuss why he did not take these findings of moderate limitations into account in the RFC, which is in error. *See* SSR 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.). Again, Defendant's attempt to supply the ALJ's reasoning for his findings (*see Doc. 29* at 9) is an impermissible *post hoc* rationalization. *See Robinson*, 366 F.3d at 1084. Accordingly, the Court will remand this case for further evaluation of Plaintiff's limitations in social functioning in accordance with SSR 96-8p and other applicable law.

### C.  Plaintiff's Remaining Claims

Because the Court finds that Plaintiff's case should be remanded for further consideration of Dr. Landau's opinions and the evidence regarding Plaintiff's social functioning, the Court finds that it is unnecessary to reach Plaintiff's remaining claims that the ALJ erred in his credibility assessment and in his hypothetical questions to the VE because those claims may be affected by the ALJ's findings on remand. *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider Plaintiff's past relevant work at step four, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, *Plaintiff's Motion to Remand (Doc. 27)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**